# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| RACHEL KATE HICKS HAGAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | NO. 3:24-cv-01223 |
| v. ) | |
| ) | JUDGE CAMPBELL |
| GLENN R. FUNK, ) | MAGISTRATE JUDGE NEWBERN |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Plaintiff Rachel Kate Hicks Hagan claims she was demoted and constructively discharged from her position as an Assistant District Attorney with the Davidson County District Attorney General's Office in retaliation for her service as foreperson on a jury that acquitted the criminal defendant of charges brought by Davidson County District Attorney General. Plaintiff brings claims against Defendant District Attorney General Glenn R. Funk for First Amendment retaliation and violation of Tenn. Code Ann. § 22-4-106. (Complaint, Doc. No. 1). Before the Court is Defendant's motion to dismiss and accompanying memorandum (Doc. Nos. 12, 13), to which Plaintiff filed a response (Doc. No. 18), and Defendant filed a reply (Doc. No. 20).

Before turning to the substance of the motion, the Court must first address Defendant's non-compliances with Local Rule 7.01(a)(4) with regard to its reply memorandum. This Rule allows for the filing of optional reply briefs that "shall not exceed five (5) pages without leave of Court." Defendant filed a 10-page reply without leave of Court to exceed the page limit. For violating the Rule, the Clerk is ordered to strike Doc. No. 20; the Court will not consider this document in deciding the motion to dismiss.

For the reasons stated herein, Defendant's motion to dismiss (Doc. No. 12) will be denied.

## I. BACKGROUND[1]

Plaintiff was employed as a prosecutor for the Office of the District Attorney General of the 20th Judicial District of Tennessee ("DA's Office") when she received a jury summons. (¶¶ 11, 20). The DA's Office has an employee manual with a policy governing jury duty. (¶ 16). The policy states:

> Jury service is a responsibility of good citizenship, and all employees are expected to honor subpoenas for jury duty in any court. **It is the office policy that employees serve rather than seek to be excused or exempted. Jury service is both a privilege and an obligation.** Our court system is founded upon the right to a jury trial, and all citizens should participate in order to insure [sic] that this right is meaningful. Because jury service requires sacrifice, many citizens try to avoid this obligation. Our office should set a good example by our willingness to serve, and we should be positive about our justice system and encourage all citizens to take part.
>
> Every employee is to notify their respective supervisor immediately upon the receipt of a jury notice so that arrangements can be made to cover the employee's office assignments. **Attorneys should also bring the matter to the attention of the judge of their court where appropriate.** On each day at the conclusion of jury service, the employee shall return to work at the office, unless it is after office hours. All jury fees belong to the employee and will not affect an employee's pay.

(¶ 16 (citing Policy 3.20) (emphasis as included in Complaint)).

Upon receiving the jury summons, Plaintiff notified her supervisor as well as Defendant. (¶ 21). Plaintiff appeared for jury service on July 15, 2024, for the case *State of Tennessee v. Karlos Reynolds*, 2023-B-1023. (¶¶ 23, 26). Plaintiff was juror number nine. (¶ 28). Based on this number, she would presumptively serve on the jury unless either the Court removed her for cause or one of the parties used a peremptory challenge to remove her. (¶ 30).

During voir dire, the trial court judge identified Plaintiff as "a lawyer in the court system" and Plaintiff stated that she knew "everyone here." (¶ 33 (citing Trial Tr. at 13:22-14:6)). During

---

[1] Unless otherwise stated, all citations in this section are to the Complaint (Doc. No. 1).

specific questioning by the prosecutor, Plaintiff stated, "I am employed as an Assistant District Attorney. So you all are my colleagues." (¶ 36 (citing Trial Tr. at 25:5-13)). Following voir dire, the prosecutor stated that Plaintiff should be struck for cause because she "works for Glenn Funk." (¶ 39 (citing Trial Tr. at 112:18-113:4)). Judge Chappell ruled that Plaintiff should remain on the jury because "she said she could be fair, and I don't think simply her employment with the Prosecutor's Office makes her unfit." (*Id.*).

Each side used only two of its nine allotted peremptory strikes; none of the strikes was used to remove Plaintiff. (¶¶ 40-41). Plaintiff then served as a member of the jury where she was selected as foreperson. (¶¶ 42, 44). The jury deliberated for less than one hour before returning a not guilty verdict on all counts. (¶ 45 (citing Trial Tr. at 213:9-216:18)).

Later that week, Plaintiff met with Defendant and two Deputy District Attorneys. (¶ 50). Defendant berated Plaintiff for her jury service, expressed outrage that she was foreperson, and accused her of being unethical. (¶¶ 51, 54). Defendant specifically took issue with the jury's returning a verdict of "not guilty," stating that the "not guilty" verdict could strain her relationship with law enforcement officers at the Metro Nashville Police Department. (¶ 52). Defendant told Plaintiff that she could not work as an attorney and needed to be "on leave." (¶ 53). On Monday, July 22, 2024, Plaintiff was formally placed on leave and told not to come to the office. (¶ 57).

The following Monday, July 29, 2024, Defendant reassigned Plaintiff to the task of reviewing U-Visa applications – a task for which no law degree or license is required. (¶ 58). Plaintiff worked in this role for approximately one month before asking to be reinstated to her attorney role. (¶¶ 62-65). She communicated her request first by letter on August 28, 2024, and then, having heard nothing, by email on September 6, 2024. (¶¶ 63-65). Although Defendant had once stated that Plaintiff could return to work in her attorney role in January or February 2025, on

3

September 9, 2024, she was informed that Defendant would not allow her work in General Sessions Court until March or April 2025. (¶¶ 66-67). Plaintiff resigned on September 10, 2024. (¶ 71).

Plaintiff claims Defendant demoted her, reassigned her to non-attorney work, removed her from courtroom work, placed her on leave, and berated her in front of her superiors and colleagues in retaliation for her for serving on a jury and for voting "not guilty" during her jury service. She brings claims for First Amendment retaliation (Count I) and a state law claim for violation of Tenn. Code Ann. § 22-4-106 (Count II). Defendant moves to dismiss the claims under Federal Rules of Civil Procedure 12(b)(1) and (6).

## II. STANDARD OF REVIEW

### A. Rule 12(b)(1)

Rule 12(b)(1) "provides for the dismissal of an action for lack of subject matter jurisdiction." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Whether a court has subject-matter jurisdiction is a "threshold determination" in any action. *Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007). This reflects the fundamental principle that "[j]urisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)); *see also*, *Wayside Church v. Van Buren Cty*., 847 F.3d 812, 816 (6th Cir. 2017) (explaining that courts "are 'bound to consider [a] 12(b)(1) motion first, since [a] Rule 12(b)(6) challenge becomes moot if th[e] court lacks subject matter jurisdiction" (quoting *Moir v. Greater Cleveland Reg'l Transit Auth*., 895 F.2d 266, 269 (6th Cir. 1990))).

4

"A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." *Cartwright*, 751 F.3d at 759. A facial attack challenges the sufficiency of the pleading and, like a motion under Rule 12(b)(6), requires the Court to take all factual allegations in the pleading as true. *Wayside Church*, 847 F.3d at 816–17 (quoting *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007)). A factual attack challenges the allegations supporting jurisdiction, raising "a factual controversy requiring the district court to 'weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist." *Id*. at 817 (quoting *Gentek Bldg. Prods., Inc*., 491 F.3d at 330). In the motion to dismiss, Defendant asserts a facial attack and argues that Plaintiff's claims are barred by the Eleventh Amendment sovereign immunity. Neither party has submitted evidence outside the pleadings.

**B. Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for failure to state a claim upon which relief can be granted. For purposes of a motion to dismiss, a court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, to state a claim for relief that is plausible on its face. *Id*. at 678. A claim has facial plausibility when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. In reviewing a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, accepts its allegations as true, and draws all reasonable inferences in favor of the plaintiff. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Thus, dismissal is appropriate only if "it appears beyond doubt that the

plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Guzman v. U.S. Dep't of Children's Servs.*, 679 F.3d 425, 429 (6th Cir. 2012).

In considering a Rule 12(b)(6) motion, the Court may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to a defendant's motion to dismiss provided they are referred to in the Complaint and are central to the claims. *Bassett v. National Collegiate Athletic Assn.*, 528 F.3d 426, 430 (6th Cir. 2008).

### III. ANALYSIS

**A. Sovereign Immunity**

Defendant argues the official capacity claims against him are barred by Eleventh Amendment sovereign immunity. Under the Eleventh Amendment, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651 (1974). The defendants bear the burden of establishing that they are entitled to sovereign immunity. *Guertin v. State*, 912 F.3d 907, 936-37 (6th Cir. 2019).

There are three exceptions to Eleventh Amendment immunity: (1) when the state has waived its immunity by consenting to the lawsuit; (2) when Congress has abrogated the state's sovereign immunity; and (3) when the plaintiff seeks only prospective injunctive relief against a federal official from violating federal law. *Boler v. Earley*, 865 F.3d 391, 410 (6th Cir. 2017) (collecting cases); *see also*, See *Stanley v. Western Mich. Univ.*, 105 F.4th 856, 863 (6th Cir. 2024) ("The Eleventh Amendment bars actions 'against states unless they consent to be sued or Congress, pursuant to a valid exercise of its power, unequivocally expresses its intent to abrogate sovereign immunity.' … Unless immunity is removed, individuals cannot seek 'monetary damages or

retrospective relief.' But they can 'seek prospective injunctive relief against state officials in their official capacity before those officials violate the plaintiff's federal constitutional or statutory rights.'") (quoting *Ashford v. Univ. of Mich.*, 89 F.4th 960, 969 (6th Cir. 2024); and *Skatemore, Inc. v. Whitmer*, 40 F.4th 727, 733 (6th Cir. 2022)). Only the third exception is at issue here.

Plaintiff argues that she has specifically limited her claims against Defendant in his official capacity to claims for injunctive relief (*see* Compl. ¶ 5) and that the Eleventh Amendment does not bar such claims. Plaintiff is correct. Because Plaintiff's claim against Defendant Funk in his official capacity is for injunctive relief, it is not barred by Eleventh Amendment sovereign immunity.

**B. First Amendment Retaliation**

"In a First Amendment retaliation claim, retaliation for the exercise of constitutional rights is itself a violation of the Constitution." *Hill v. Lappin*, 630 F.3d 468, 473 (6th Cir. 2010) (citation and internal quotations omitted). "And this right extends to public employees." *Barton v. Neeley*, 114 F.4th 581, 591–92 (6th Cir. 2024) (citing *Bd. of Cnty. Comm'rs v. Umbehr*, 518 U.S. 668, 675 (1996) ("The First Amendment's guarantee of freedom of speech protects government employees from termination because of their speech on matters of public concern.")). To demonstrate a First Amendment retaliation claim against a government official, the plaintiff must show that First Amendment protected her speech, that the official took adverse action against her, and that there was causal connection between her protected speech and the adverse conduct. *See Hall v. Navarre*, 118 F.4th 749, 759 (6th Cir. 2024). "Generally, the First Amendment protects a public employee's speech if: (1) the speech was on a matter of public concern, *Connick v. Myers*, 461 U.S. 138, 146 (1983); (2) the speech was not made pursuant to the employee's official duties, *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006); and, assuming the employee can satisfy the first two elements,

7

(3) the employee's interest in speaking on a matter of public concern outweighs the employer's interest 'in promoting the efficiency of the public services it performs through its employees,' *Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205*, 391 U.S. 563, 568 (1968)." *Josephson v. Ganzel*, 115 F.4th 771, 783–84 (6th Cir. 2024).

Plaintiff claims Defendant retaliated against her based on her speech as a prospective juror during voir dire and as a juror in rendering a verdict of guilty in a criminal case for which her employer was the prosecutor. Defendant concedes that "an ADA is entitled to First Amendment protection in answering questions as a public employee empaneled in a jury pool and as a juror rendering a verdict." He argues, however, that Plaintiff's speech during her jury service was not protected speech because her interest in speaking does not outweigh Defendant's interest in managing its offices to ensure its "employees' official communications are accurate, demonstrate sound judgment, and promote the employer's mission." (*See* Doc. No. 13 at 9 (citing *Garcetti*, 547 U.S. at 423)).

Defendant's argument encompasses the second and third prongs of the test for protected speech. First, Defendant asserts that Plaintiff's speech in court as a private citizen summoned for jury duty was an "official communication" by an employee of the District Attorney's office. Even if there were a reasoned basis for this assertion (and the Court can think of none), a determination that Plaintiff's speech in connection with her jury service was pursuant to her official duties as an employee of the District Attorney's office would require the Court to construe the allegations in the complaint in a light most favorable to the Defendant, which is plainly not the standard on a motion to dismiss. Moreover, in making this assertion, Defendant fails to address the fact specific inquiry for determining whether speech is spoken as a private citizen or as an employee. *See Fox v. Traverse City Area Pub. Schs. Bd. of Educ.*, 605 F.3d 345, 350 (6th Cir. 2010) (citing *Garcetti*,

8

Case 3:24-cv-01223    Document 24    Filed 09/29/25    Page 8 of 14 PageID #: 417

547 U.S. at 424–25) ("The question of whether a statement was spoken as a public employee or as a private citizen for First Amendment purposes [is] a practical one, requiring a fact-specific inquiry into the duties an employee actually is expected to perform.") (citation modified); *Barton*, 114 F.4th at 589 (citing *Lane*, 573 U.S. at 240) ("The mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech. The critical question ... is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties.").

Defendant's next argument is that Plaintiff's interests in speaking on the matter of her juror qualifications and rendering a verdict do not outweigh the interests of the District Attorney's office in promoting the legal and ethical conduct of its employees. (Doc. No. 13 at 9-13). This argument is also inappropriate on a motion to dismiss. Not only would it require the Court to construe the allegations in the Complaint in a light favorable to the Defendant, consideration of Defendant's asserted interests in limiting employee speech on these matters necessitates factual determinations and considerations of matters outside the pleadings not appropriate at this stage in the litigation.[2]

Perhaps recognizing that a motion to dismiss is not the proper vehicle for the Court to weigh the relative speech interests of the employer and employee, Defendant asks the Court to find as a matter of law that "an ADA is not protected by the First Amendment from her employer's scrutiny for failing to inform the court of the inherent conflict of interest created by her jury service when called to jury service in a criminal proceeding in the county in which she has sworn an oath

---

[2] The Attorney General's office regularly practices in this Court and is knowledgeable about Rule 12 standards, but nevertheless (and somewhat surprisingly) ignores the standard and asks for dismissal by describing Defendant's purported reasoning for decisions at issue as a basis for dismissal.

9

of office to be an ADA."[3] (*Id*. at 13). In support, Defendant points to the following authority: (1) Tennessee Rules of Professional Conduct concerning conflicts of interest with regard to representation of clients and disruption of a tribunal (T.R.P.C. 1.7(a)(2) and 3.5); (2) a decision from the Tennessee Court of Criminal Appeals which has since been overruled regarding disqualification of government attorneys in criminal matters (*State v. Grooms*, 2020 WL 9171956, at *8 (Tenn. Ct. App. Nov. 25, 2020), overruled by *State v. Eady*, 685 S.W.3d 689 (Tenn. 2024)); and (3) Justice O'Conner's concurring opinion in *Smith v. Phillips*, 455 U.S. 209, 222 (1982), suggesting that if it is revealed post-trial that a juror is "an actual employee of the prosecuting agency" the Sixth Amendment right to an impartial jury would not allow a verdict to stand.

The Court declines to make such sweeping pronouncement concerning the relative speech interests of *all* district attorney employers vis-à-vis *all* assistant district attorneys in their employ. Not only is such a ruling not directly supported by the cited authority, as stated above, balancing these interests in the specific context of *this* case is not appropriate at the motion to dismiss stage, and making these fact specific determinations as to district attorneys and their employees writ large is unlikely ever to be appropriate.

## C. Qualified Immunity and Absolute Immunity

Defendant next argues that he is entitled to qualified immunity and/or absolute prosecutorial immunity. (Doc. No. 13 at 13-15). Because absolute immunity is granted "only sparingly," officials seeking its protection "bear[] the burden of showing that qualified immunity

---

[3] Throughout the motion to dismiss, Defendant either ignores or mischaracterizes the allegations in the complaint as stating that Plaintiff failed to notify the state trial court of her "conflict of interest" before serving on the jury (*see* Doc. No. 13 at 1, 2, 10, 11, 12, 13) when the complaint and trial transcript of the criminal court proceeding which is attached to the complaint clearly state that Plaintiff informed the trial court of her employment and that the trial judge considered whether it would be appropriate for Plaintiff to serve as a juror (*see* Complaint, Doc. No. 1, ¶¶ 33-37, 39). This approach by Defendant is troubling, to say the least.

10

does not suffice." *Stockdale v. Helper*, 979 F.3d 498, 502 (6th Cir. 2020) (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1996)) (citation modified). Accordingly, the Court begins with qualified immunity.

1. Qualified immunity

"Qualified immunity shields government officials sued in their personal capacity from liability for civil damages unless: (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *Novak v. Federspiel*, 140 F.4th 815, 820 (6th Cir. 2025) (citing *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018) (citation modified)). "In the context of a motion to dismiss, the test is whether, reading the complaint in the light most favorable to the plaintiff, it is plausible that an official's acts violated the plaintiff's clearly established constitutional right." *See Cooperrider v. Woods*, 127 F.4th 1019, 1036 (6th Cir. 2025) (citation modified). "The plaintiff has the burden of showing that the defendant is not entitled to qualified immunity." *Novak*, 140 F.4th at 820 (citing *Mosier v. Evans*, 90 F.4th 541, 546 (6th Cir. 2024)).

For purposes of qualified immunity, Defendant challenges only the clearly established prong.[4] Defendant argues that it was not clearly established that changing Plaintiff's job responsibilities because of statements she made during jury service violated Plaintiff's constitutional rights under the First Amendment. Plaintiff counters that existing law put the question of the illegality of retaliation for jury service beyond debate. *See Chappel v. Montgomery*, 131 F.3d 564, 580 (6th Cir. 1997) ("All public officials have been charged with knowing that public employees may not be disciplined for engaging in speech on matters of public concern.");

---

[4] Although Defendant argues in a different section of his memorandum that Plaintiff's speech is not protected speech, in arguing that he is entitled to qualified immunity, he concedes that Plaintiff has alleged a First Amendment violation. (*See* Doc. No. 13 at 15 ("While Plaintiff has alleged First Amendment violations, the violations are not 'clearly established.'")).

11

*Rankin v. McPherson*, 483 U.S. 378, 383 (1987) ("It is clearly established that a State may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech.").

As discussed above, Plaintiff has plausibly alleged that the speech at issue is protected speech, and it is clearly established that retaliation for protected speech violates the First Amendment. Defendant's arguments to the contrary rest on whether Plaintiff's interests are outweighed by the Defendant's interest in promoting the legal and ethical conduct of its employees, which will involve consideration of facts outside the pleadings and therefore cannot be resolved on a motion to dismiss. *See Cooperrider v. Woods*, 127 F.4th 1019, 1036 (6th Cir. 2025) ("it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity" (citing *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015)). Accordingly, at this stage, the Court will not dismiss Plaintiff's claims based on qualified immunity.

2. Absolute Prosecutorial Immunity

Defendant argues that he is entitled to absolute prosecutorial immunity. Absolute immunity applies to functions "intimately associated with the judicial phase of the criminal process." *Stockdale v. Helper*, 979 F.3d 498, 502 (6th Cir. 2020).

The Sixth Circuit has explained:

> The analytical key to prosecutorial immunity is *advocacy* – whether the actions in question are those of an advocate. Even when a prosecutor acts in an administrative capacity, not as an advocate, he still enjoys absolute immunity if the act is done in service of an advocacy function. So long as it is directly connected with the conduct of a trial, even administrative conduct stands behind the barricade of absolute immunity. But acts that merely safeguard the fairness of the criminal judicial process – say a prosecutor offering legal advice to officers during an investigation – do not necessarily warrant absolute immunity.

12

*Id*.

Defendant argues absolute immunity applies to decisions related to Plaintiff's job assignments because he "acted to protect the integrity of his Office in its advocacy function." As an initial matter, accepting Defendant's characterization of the reasons for his actions would require construing the allegations in the complaint in his favor. Moreover, the cited authority does not support such broad sweeping immunity for personnel decisions. Two observations in *Stockdale* support this conclusion. First, the *Stockdale* decision favorably cites a decision from the Eleventh Circuit Court of Appeals, *Mikko v. City of Atlanta*, for the proposition that a prosecutor is not immune from liability for firing its own employees. *Stockdale*, 979 F.3d at 503 (citing *Mikko v. City of Atlanta*, 857 F.3d 1136 (11th Cir. 2017)). Second, *Stockdale* states that absolute immunity should be granted "only sparingly" when the conduct is related to "case-driven advocacy." *Id*. Here, Defendant's supervision and management of "competent and ethical personnel in order to protect and serve the public," (*see* Doc. No. 13 at 14) is not "intimately associated with the judicial phase of the criminal process" such that absolute immunity applies.

### D. State Law Claim

Plaintiff brings a claim for violation of Tenn. Code Ann. § 22-4-106(d), which prohibits an employer from discharging or discriminating against an employee for serving on jury duty and provides that any employee who is "discharged, demoted or suspended because the employee has taken time off to serve on jury duty is entitled to reinstatement and reimbursement for lost wages and work benefits."

Defendant provides three reasons the state law claim should be dismissed. First, Defendant argues the Court should decline to exercise supplemental jurisdiction over this state law claim. As discussed above, the federal claim will not be dismissed. Accordingly, the Court finds no reason

13

to decline supplemental jurisdiction over the state law claims arising out of the same underlying conduct.

Next Defendant argues the claim against Defendant in his individual capacity should be dismissed because Defendant in his individual capacity is not Plaintiff's employer. Plaintiff responds that this claim is only asserted against Defendant in his official capacity. Accordingly, this is also not cause to dismiss the claim.

Finally, Defendant states that in a letter to Defendant (Doc. No. 1-1), Plaintiff "essentially admitted that she was not being scrutinized for taking time off to serve on a jury." No further argument on this point is developed. To the extent Defendant asserts that this claim fails because Plaintiff's employment was not terminated because she took time off work for jury duty but for other reasons associated with her jury service, this argument is plainly without merit. The statute prohibits discharge or discrimination "in any manner" against an employee for serving on jury duty and the remedies provided in the statute are not exclusive. *See Eddins v. Geneva Pharmaceuticals, Inc.*, 877 F. Supp. 413 (E.D. Tenn. 1994) (citing *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 899 (Tenn. 1992)).

Accordingly, Plaintiff's state law claim will not be dismissed.

### IV. CONCLUSION

For the reasons stated, Defendant's Motion to Dismiss (Doc. No. 12) is **DENIED**. An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE